333 P.2d 459

Rollin **HUNTER** and Audrey Hunter, husband and wife, Plaintiffs-Appellants,

**v.**

Gene **HORTON** and Josephine Horton, husband and wife; Claire Horton, and Lois J. Yost, Defendants-Respondents.

No. 8642.

Supreme Court of Idaho.

Dec. 24, 1958.

Elam & Burke, Boise, for respondents.

Anderson, Kaufman & Anderson, Boise, for appellants.

TAYLOR, Justice.

Plaintiffs (appellants) brought this action to recover damages for the death of their minor daughter, who was killed May 26, 1956, while a guest in an automobile—a Willys Jeepster—owned by the parents of defendant (respondent) Lois Yost. The vehicle at the time of the accident was driven by defendant (respondent) Claire Horton, with the permission of Lois Yost, who was present in the automobile. Claire Horton was a minor of the age of 15 years who had been issued a driver's license on an application signed by the defendants (respondents) Gene and Josephine Horton, her parents.

Viewed in the light most favorable to the plaintiffs, the evidence tends to show the following facts. On the day of the accident a group of six teen-age girls went on a picnic at State Park on the Boise river near Lucky Peak dam. From there the girls went to Idaho City, Lois Yost driving. On the way back and at a point above the dam, Lois permitted Claire Horton to drive the car. There were three girls in each seat. Lois sat in the middle in the front seat and deceased, Mardy Hunter, sat in the middle in the back seat. Thereafter, Claire drove the car between 50 and 60 miles per hour, and at times on the wrong side of the road around curves. On one occasion, "we met an oncoming car which we had to pull over fast or we would have hit it." At Lucky Peak dam the driver attempted to drive up a concrete slab six to eight feet high, pitched at an angle of about 45 degrees. Thereafter, she drove on some dirt roads on the far side of the river, some of which were on sloping hillsides where the car tipped considerably, frightening some of the girls, who thought it might tip over. Back on the highway the car was driven between 50 and 60 miles per hour. On one occasion, while rounding a blind curve, the Jeep was passing a car driven by a witness, Mrs. Peters, and there met a funeral procession proceeding in the opposite direction. Mrs. Peters pulled to the right, as did the funeral procession, and the Jeepster "just barely made in between." Both Mrs. Peters, and the driver leading the funeral procession, were impressed by the incident, and the latter estimated the speed of the Jeepster at between 45 and 55 miles per hour. Thereafter, the Peters car passed the Jeep, and later was again passed by the Jeep, at which time one of the occupants, identified by voice as decedent, was heard to yell, "What's the hurry?" and a reply was heard from the front seat, "We are going to town." Shortly thereafter, the Jeep was driven around a sharp curve to the left at a

speed described by one of the girls as "awful fast," frightening the girls in the car. Several protests were made during the course of these events by various passengers in the Jeep, including the deceased.

Thereafter, and just prior to the accident, the Jeepster came up behind a car owned and driven by a Mr. Baker, in which the witness, Patricia Coleman, was the only other passenger. The Baker car was traveling at 35 miles per hour. The girls pulled out as though to pass and then pulled back in behind the Baker car again. One of the girls testified that this was done to permit a car, coming from the opposite direction, to pass. The witness, Coleman, said there was no other car coming. The Jeep then pulled out from behind the Baker car and in passing on a slight curve to the right, its left wheels slipped off the left edge of the hard surfaced highway onto the graveled shoulder. It then veered to the right across the highway, and then back across the highway and into the borrow pit on the left, where it came to rest bottom side up. Mardy Hunter was killed as a result of the accident.

One of the girls estimated the speed of the Jeep as it passed the Baker car at 50 to 60 miles per hour, and the speed of the Baker car at 45 miles per hour. Miss Coleman testified that she and Mr. Baker had gone for a ride up to Lucky Peak and had maintained a speed of not over 35 miles an hour; that they were traveling at that speed when the girls came up behind them; that

in passing them the Jeepster traveled at the usual speed of a car passing another at such speed. The applicable speed limit was 50 miles per hour.

At the place of the accident the hard surface of the highway was 20 to 22 feet wide with graveled shoulders on each side, and a slight drop off from the edge of the hard surface to the gravel. Skidmarks were left on the highway for a distance of 99 feet and it was 73 feet from the point where the marks left the highway to the point where the car came to rest.

The accident occurred in midafternoon. The view of the road ahead was free of obstruction and clear to the view of the driver of the Jeep at all times, except such obstruction as would be occasioned by the Baker car when the Jeepster was following behind it. There was no car coming from the opposite direction, or any obstruction to the free use of the left hand lane for the purpose of passing the Baker car.

On trial at the close of plaintiffs' evidence the court granted defendants' motion for nonsuit. Plaintiffs brought this appeal from the judgment entered thereon.

In granting the motion the trial judge said:

"* * * I am of the opinion that while the evidence indicates that there was at least evidence of reckless driving prior to the time of the accident, that at

the time of the accident the plaintiff hasn't sustained its burden of proof to show the reckless disregard required by our statutes. All of the evidence seems to indicate at that time the proximate cause of the accident was an unfortunate circumstance, but there is no evidence that defendant Claire Horton at that particular time or even immediately prior thereto was driving as required by the guest statute."

The question presented is the sufficiency of the evidence to raise an issue for the jury as to whether the death was caused by conduct of the driver amounting to "reckless disregard of the rights of others", as required by the guest statute, I.C. § 49–1401.

"* * * The term 'reckless disregard' as used in said section means an act or conduct destitute of heed or concern for consequences; especially foolishly heedless of danger, headlong rash; wanton disregard, or conscious indifference to consequences." Foberg v. Harrison, 71 Idaho 11, at page 16, 225 P.2d 69, at page 71.

The foregoing definition of reckless disregard has been applied by this court in subsequent cases. In Mason v. Mootz, 73 Idaho 461, 253 P.2d 240, we said:

"* * * reckless disregard, within the meaning of the guest statute, requires proof of an absence of heed or concern for consequences, a heedlessness of danger, a 'wanton disregard, or conscious indifference to consequences.' This implies a consciousness of danger and a willingness to assume the risk, or an indifference to consequences." 73 Idaho at page 468, 253 P.2d at page 243.

In that case it was held that driving in the nighttime at "considerable speed" down a slope into a hollow where the car ran off the road while the driver was attempting to avoid collision with horses thereon, and where the car turned end over end, killing a guest, was not sufficient to establish reckless disregard on the part of the driver.

In Riggs v. Roberts, 74 Idaho 473, 264 P.2d 698, it was held that driving at 65 miles per hour on a black top highway with a total weight of passengers and car of 4,700 pounds, in warm weather, with a left rear tire which was worn smooth and which blew out, causing injury, did not establish reckless disregard.

In Turner v. Purdum, 77 Idaho 130, 289 P.2d 608, we held that driving at night at 45 to 50 miles per hour, when the wind was blowing and there was some dust in the air and occasional sprinkles of rain, when the car crashed into a potato digger being towed upon the highway by a tractor, upon the rear of which was a white light reflecting downward across the digger, was not reckless disregard. There we said:

" * * * The evidence does not disclose that respondent Purdum was driving at a rate of speed which could constitute more than ordinary negligence under the circumstances. His failure to see the potato digger in time to avoid the accident could not be more than ordinary negligence. There is nothing in the record to indicate that respondent Purdum was or should have been conscious of danger and to indicate a willingness on his part to assume the risk, or an indifference to consequences." 77 Idaho at page 138, 289 P.2d at page 612.

In Wilson v. Bacon, 78 Idaho 389, 304 P. 2d 908, 909, we held that a complaint which charged that the defendant drove into an intersection of a busy highway without looking either to the right or to the left, and directly into the path of a truck approaching from the right at a speed of 40 miles per hour and plainly visible, did not state a cause of action under the guest statute. There we quoted from 2 Restatement of the Law of Torts, § 500 g., as follows:

"Reckless misconduct differs from negligence in several important particulars. It differs from that form of negligence which consists in mere inadvertence, incompetence, unskillfulness or a failure to take precautions to enable the actor adequately to cope with a possible or probable future emergency in that reckless misconduct requires a conscious choice of a course of action either with knowledge of the serious danger to others involved in it or with knowledge of facts which would disclose this danger to any reasonable man." 2 Restatement of the Law of Torts, § 500g.

In Grant v. Clarke, 78 Idaho 412, 305 P.2d 752, we held that driving in the nighttime with the car partly over to the left of the center line of the highway and there colliding with a car coming from the opposite direction did not amount to reckless disregard. See, also, Loomis v. Church, 76 Idaho 87, 277 P.2d 561.

In the foregoing case we also held that the burden of proving that the conduct of the driver amounted to reckless disregard of the rights of others is upon the plaintiff.

The case before us is in some respects similar to Mitrovich v. Pavlovich, 61 Nev. 62, 114 P.2d 1084. In that case a youthful, inexperienced driver, without a driver's license, drove his car along a highway at 50 miles per hour where the speed limit was 40 miles per hour. He lost control when the right wheels ran off the paved surface, the car skidded along the right shoulder a short distance, then in a diagonal direction across the pavement and along the left shoulder for a short distance, then left the highway and crashed into a fence. The court held the facts did not warrant a new trial, saying:

"* * * We are decidedly of the opinion also that the facts as found by the trial court show no wanton or reckless disregard of the probable consequences of his unskillful driving. Our attention is called to the fact that respondent was exceeding the speed limit of forty-five miles an hour. This in itself does not constitute wilful misconduct." 114 P.2d at page 1086.

In Carroll v. Miller, 175 Va. 388, 9 S.E. 2d 322, 727, the host was driving in the nighttime, at 35 miles per hour, on a good road, except there were several curves. The statute, Code, § 2154(209), fixing the applicable speed limit provided that speed in excess of 25 miles per hour was "prima facie reckless driving." The car went over a four-inch curb on the right side of the road, caromed from a tree near the roadside and crashed into another tree 40 feet beyond. The court said that the conduct to be gross "should shock fair-minded men," and quoted from an earlier case, Young v. Dyer, 161 Va. 434, 170 S.E. 737, as follows:

"'A mere failure to skillfully operate an automobile under all conditions, or to be alert and observant, and to act intelligently and operate an automobile at a low rate of speed may, or may not, be a failure to do what an ordinarily prudent person would have done under the circumstances, and thus amount to

lack of ordinary care; but such lack of attention and diligence, or mere inadvertence, does not amount to wanton or reckless conduct, or constitute culpable negligence for which defendant would be responsible to an invited guest.'" 9 S.E.2d at page 325.

In the recent case of Sharick v. Marvin, 1 A.D.2d 284, 150 N.Y.S.2d 891, 893, the New York court was concerned with an accident which occurred in Massachusetts. The Massachusetts guest statute requires a showing of "gross negligence" only, and the New York court applied the Massachusetts rule. There the driver approached a curve on a down grade, where the road was wet and slippery in spots, at a speed of "at least 45 to 50" miles per hour, and where the applicable speed limit was 45 miles per hour. The car skidded and went back and forth across the highway two or three times. It crashed into a guardrail on the right where the host and guest were thrown out. The car went on down the grade and crashed into another car coming from the opposite direction. The plaintiff had judgment upon verdict in her favor in the trial court. The supreme court, appellate division, reversed the judgment on the ground that the evidence was insufficient to establish gross negligence.

In Sutton v. Bland, 166 Va. 132, 184 S.E. 231, the Virginia court was concerned with an accident which occurred in North Caro-

lina, and applied the North Carolina law, where *ordinary negligence* will support a recovery by a guest against his host. In that case the driver was traveling at 45 miles per hour down a 4½% grade which ended in a curve to the left. It had been raining and the pavement was slippery. The car ran off the pavement onto the shoulder and skidded when the driver attempted to bring it back onto the pavement, ran across the road to the left and down an embankment. The Virginia court held the evidence insufficient to support a verdict in favor of the plaintiff.

In McLeod v. Dutton, 13 Cal.App.2d 545, 57 P.2d 189, the host driving on a foggy night passed another car opposite a "slow" sign, at 73 miles per hour. While attempting to return to his own lane he collided with a car crossing the highway and at the moment astride the middle line. The host did not see the third car nor the lights from it. To him the road appeared to be clear. The host car and the car which was passed were each occupied by two young couples who were going to a dance. The two drivers were, or had been, racing to see which would arrive at the dance first. Before the collision one of the guests had protested against the speed. The California court held that the evidence did not support the jury's verdicts for the plaintiffs on the ground of wilful misconduct under the guest statute, reversed the judgments and directed judgments for defendants.

In Katz v. Kuppin, 44 Cal.App.2d 406, 112 P.2d 681, the host was driving in bright moonlight on a wide paved boulevard at a speed in excess of 70 miles per hour. At a curve the car ran off into a ditch. On several occasions the plaintiff had requested the defendant to reduce the speed. When these requests were made the speed was temporarily reduced and then picked up again, and the host had become angry because of such admonitions. The court held the evidence insufficient to show wilful misconduct, in that it did not disclose that the driver knew of, or had reason to apprehend, danger at the curve ahead.

In Mosconi v. Ryan, 94 Cal.App.2d 227, 210 P.2d 259, 261, the host car, in which two teen-age guests were riding, was driven by a 16-year old boy. The car was driven along a macadam road, 18 feet wide, with soft sand shoulders, at a speed between 70 and 80 miles per hour, and had passed "numerous" cars going in the same direction, some of which were traveling 60 to 65 miles per hour. The driver was requested to "take it easy" and to slow down. The accident occurred at the commencement of a long winding curve where the car went off the road, turned over, and left 240 feet of tire and brush marks. The driver and one of the guests were killed. The court upheld the jury's verdict for defendant on the issue of wilful misconduct under the guest statute, and said:

" * * * We could not disturb that finding without holding, in effect, that every young boy who takes long chances in driving his car realizes that such conduct will probably result in injury to himself or his guests, or is wholly indifferent as to the consequences. This, of course, would be not only bad law, but also untrue as a matter of fact. It was not an unreasonable conclusion from the evidence that the Ryan boy did not have an appreciation of the danger of what he was doing or any fear that he or his guests would suffer injury." 210 P.2d at page 262.

In Menkes v. Vance, 57 N.M. 456, 260 P.2d 368, the host drove his car on a bladed dirt road at high speed with only the left head light burning. There were slight turns in the road occasioned by the presence of mesquite brush along the sides. At one of these the car left the road and struck a light pole. The guest had protested the speed. In applying the New Mexico guest statute, which in material respects is the same as ours, the court said:

" * * * Viewing the testimony in the light most favorable to the plaintiff, and indulging all reasonable inferences flowing therefrom in his behalf, we are unable to bring ourselves to the belief it establishes the car was driven in heedless and reckless disregard of the rights of the plaintiff so as to entitle him to a recovery under our guest statute. The testimony would support a finding of negligence, but that is not sufficient here." 260 P.2d at pages 369, 370.

In an earlier New Mexico case, Smith v. Meadows, 56 N.M. 242, 242 P.2d 1006, the court, noting that the New Mexico statute was adopted from Connecticut, reviews the Connecticut cases and holds that the plaintiff must establish reckless disregard of the rights of others, which was the proximate cause of the injury. The Connecticut cases reviewed would not support a finding of reckless disregard on the facts before us. In Smith v. Meadows the host drove at a speed of from 70 to 80 miles per hour at night on a straight, dry road and crashed into the rear of a car parked on the highway without lights. The court held the evidence insufficient under the guest statute, saying:

" * * * we are convinced that there was no substantial evidence in the present case upon which reasonable persons could base a conclusion that the accident resulting in the injuries to plaintiff was caused by defendant's heedless and reckless disregard of the rights of others * * *." 242 P.2d at page 1014.

In Lee Bros. v. Jones, 114 Ind.App. 688, 54 N.E.2d 108, the host drove at 50 miles per hour in passing a truck on a four lane highway. At the time the passing lane was clear, but the two lanes on the opposite side, for traffic going in the opposite direction,

were both heavily occupied. The host's car crashed into a car which came into his lane from the opposite side of the highway. The plaintiff charged that the defendant and the truck driver were racing. The court held the evidence insufficient under the guest statute and said:

"* * * To constitute 'wanton or willful misconduct' it must appear that the driver of an automobile is conscious of his conduct, and with an appreciation of existing conditions knows that his conduct, if persisted in, will probably result in injury to his guest; and yet, with reckless indifference to consequences, he consciously or intentionally persists in such conduct and as the proximate result thereof his guest is injured." Lee Bros. v. Jones, 54 N.E.2d 108, at page 113.

In Gill v. Hayes, 188 Okl. 434, 108 P.2d 117, the host was driving in the nighttime upon a curved paving at 70 miles per hour; it was misty and the highway was damp; the brakes on the car were slightly off-balance so as to cause the car to swerve slightly when applied; the speed was in violation of the speed law of New Mexico, where the accident occurred; and the driver had been asked to slow down. Sudden application of the brakes caused the car to go off to the left and then to the right, and roll over. The Oklahoma court held that the conduct did not constitute reckless disregard of the rights of others under the New Mexico statute, and said:

"Nearly all the courts passing upon this identical statute have held that the word 'heedlessness' as there used is to be read in connection with 'reckless disregard of the rights of others,' and that in order to create liability, the acts of the operator causing the accident must be something beyond mere negligence; and something approaching willful or wanton misconduct." Gill v. Hayes, 108 P.2d 117, at page 120.

Other cases similarly applying the guest statute are: Del Bosque v. Kakoo Singh, 19 Cal.App.2d 487, 65 P.2d 951; Porter v. Hofman, 12 Cal.2d 445, 85 P.2d 447; Carpenter v. Yates, 58 N.M. 513, 273 P.2d 373; Gillespie v. Rawlings, 49 Cal.2d 359, 317 P.2d 601; Duncan v. Lowe, 221 Iowa 1278, 268 N.W. 10; Bushie v. Johnson, 296 Mich. 8, 295 N.W. 538.

Citation of the foregoing cases from other jurisdictions is done for purpose of comparison only. Such cases are not necessarily illustrations of proper applications of our guest statute. This is particularly true of the California cases. There the guest statute requires a showing of "wilful misconduct", and may be considered somewhat more restrictive than ours. Mason v. Mootz, 73 Idaho 461, 467, 253 P.2d 240; Emery v. Emery, 45 Cal.2d 421, 289 P.2d 218, 221.

In negligence cases the plaintiff must prove that the negligence complained of was the proximate cause of the injury. Chatterton v. Pocatello Post, 70 Idaho 480, 223 P.2d 389, 20 A.L.R.2d 783; Splinter v. City of Nampa, 74 Idaho 1, 256 P.2d 215. In Clark v. Chrishop, 72 Idaho 340, 241 P.2d 171, we said:

"The burden was on respondents to plead and prove not only negligence on the part of appellant but that such negligence was the proximate cause of the accident. There must be some causal connection between the negligence of appellant and the injury to deceased in order to render appellant liable." 72 Idaho at page 342, 241 P.2d at page 172.

" * * * A negligent act or omission at or before the time of an injury which would have occurred even in the absence of such negligence cannot be regarded as the cause in fact of the injury, and, a fortiori, cannot be regarded as the proximate or legal cause of the injury or a substantial factor in bringing about the injury." 65 C.J.S. Negligence § 106, p. 656.

" * * * To be a substantial factor in producing damage, a cause must have continued down to the moment of the damage, or at least down to the setting in motion of the final active injurious force which immediately produced or preceded the damage. As sometimes stated, a negligent act is the proximate cause of an injury when it is the last or one of the last acts, in the series of events which resulted in the accident, but for which the accident would not have happened." 38 Am.Jur., Negligence, § 55, page 704.

The rule as to proximate cause in negligence cases is applicable to reckless disregard in guest cases. The statute requires as a condition to the right of recovery that the guest show the accident was *"caused by * * * reckless disregard of the rights of others"* on the part of the owner or operator. I.C. § 49-1401. (Emphasis added.)

Appellants rely heavily upon the evidence of conduct of the driver during the course of her driving prior to the time of the accident. The question of the admissibility of that evidence is not before us, and we do not decide it. However, such evidence may be proper and helpful in characterizing the conduct and mental attitude of the driver at the time of the accident, in a doubtful case where such conduct presents a jury question on the issue of reckless disregard. But where the evidence of conduct at the time of the accident is insufficient to raise an issue of reckless disregard, evidence of prior conduct is immaterial. Conduct at times and places prior to the accident, even though reckless, which

**486**

has no causal connection with the accident, cannot support a recovery under the guest statute.

 Immediately preceding the accident the driver had slowed the Jeepster down to the speed of the Baker car, and whether that be considered as 35 or 45 miles per hour, the attempt to pass on a slight curve when the view of the driver was unobstructed and the road ahead was free of other traffic, and when the passing speed did not exceed 50 to 60 miles per hour, would not be sufficient to constitute ordinary negligence. If reasonable minds could differ on that proposition, still it cannot be seriously urged that such facts are sufficient to raise an issue as to whether the driver was acting in reckless disregard of the rights of her passengers. As Justice Porter said in Turner v. Purdum, "There is nothing in the record to indicate that respondent Purdum [the driver] was or should have been conscious of danger and to indicate a willingness on his part to assume the risk, or an indifference to consequences." Turner v. Purdum, 77 Idaho 130, at page 138, 289 P.2d 608, at page 612.

There is nothing in the facts from which it can be inferred that Claire Horton was conscious of any danger in attempting to pass the Baker car, or that she was aware, or should have been aware, of the possibility that the left wheels might go over the left edge of the pavement and cause her to lose control. There is nothing to indicate a willingness on her part to assume the risk, or an indifference to the consequences thereof. Thus, the evidence before us lacks the essential elements of reckless disregard set forth in our previous decisions.

The judgment of nonsuit is affirmed.

Costs to respondents.

PORTER, SMITH and McQUADE, JJ., concur.

KEETON, C. J., dissents.